## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:18-CV-14126-ROSENBERG/MAYNARD

SILVER STREAK TRAILER COMPANY,
LLC, a Florida Limited Liability Company,

      Plaintiff,

                                        **JURY TRIAL REQUESTED**

v.

THOR INDUSTRIES, INC., a Delaware
Corporation and THOR TECH, INC.,
a Nevada Corporation,

      Defendants.

_____/

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
### OF TRADE DRESS NON-INFRINGEMENT AND PETITION FOR CANCELLATION
### OF U.S. TRADEMARK REGISTRATION NO. 3,534,143

      Plaintiff SILVER STREAK TRAILER COMPANY, LLC ("Silver Streak" or "Plaintiff") files its declaratory complaint sounding in trade dress and trademark non-infringement against Defendants THOR INDUSTRIES, INC. ("Thor Industries") and THOR TECH INC ("TTI") (both collectively "Defendants" or "Thor") hereby alleges as follows:

### PARTIES, JURISDICTION AND VENUE

      1.      This is an action for declaratory judgment by Silver Streak against Thor seeking a finding of trade dress non-infringement, cancellation of U.S. Trademark Registration No. 3,534,143 due to abandonment under 15 U.S.C. §§1127 and 1064 under the Lanham Act, cancellation of U.S. Trademark Registration No. 3,534,143 under 15 U.S.C. §§ 1119 and 1115(b)(8) as functional, as well as a similar finding under the common laws of the State of Florida that Silver Streak has not engaged in any form of unfair competition against Thor.

2.      Silver Streak is a limited liability company formed and organized under the laws of the State of Florida in 2016.  Silver Streak maintains both its headquarters and manufacturing facilities in Stuart, Florida, and has advertised, marketed and promoted its line of all-aluminum constructed camper trailers via its website www.SilverStreakTrailerCo.com (the "Silver Streak Website").

3.      Silver Streak acquired certain permissions and releases to use the original designs, configurations as well as the styling of "Silver Streak Trailer Co" previously manufactured at 2319 Chico Ave., El Monte, California (the "Predecessor Entity").

4.      The Predecessor Entity designed, assembled, manufactured and sold unique and highly distinctive aluminum constructed camper trailer designers – including their 22' and 25' Clipper Models – for approximately forty-eight years (between 1949 until approximately 1995):



The "Clipper Design" – which Silver Streak has acquired and/or obtained the rights to – includes a distinctive towed camper trailer configuration, where the front portion of the camper includes:

(a)    a plurality of curved transverse ribs located about the front of the trailer;

(b)    a single pronounced curved vertical transverse rib stretching from the top of the trailer through the front, ending at the base (bottom) of the front of the trailer; and

(c)    two mirror imaged horizontally elongated windows on the front of the trailer, both positioned equidistant about the single pronounced vertical transverse rib (known as the "Alien Eye" design).

Of these three elements that make up the styling of the "Clipper Design," the underlying design includes eleven curved transverse ribs, and an additional pronounced additional eleventh transverse ribs posited vertically (running from the top to the bottom of the front of the trailer) provides certain functional benefits – namely, the use of curved transverse ribs ultimately allow for (a) the rounding of the front of the trailer to improve aerodynamics thereby reducing drag, and (b) increased strength of the trailer body to allow for transport at higher speeds.  That said, the other two elements are non-functional trade dress specific and unique to the Silver Streak design.

5.      Thor Industries is a publicly traded corporation, formed and organized under the laws of Delaware, located at 601 East Beardsley Ave., Elkhart, Indiana 46514.  Founded in August 1980, Thor Industries (through various divisions and/or subsidiary entities) makes, assembles, manufactures, advertises, markets, promotes, offers for sale and sells a variety of recreational vehicles (RVs), including towable and/or motorized recreational vehicles, including Heartland™, Jayco™, Livin Lite™, and Airstream™ (amongst others).

6.      Airstream, a division within Thor Industries, makes, assembles, manufactures and sells (partially) aluminum constructed towable campers in Jackson Center, Ohio, including the following trailer design (known as the "Classic"):



Airstream (through its predecessor entity prior to acquisition by Thor) started making campers in 1948 after World War II in the Los Angeles area (only a few miles from the Predecessor Company) – based upon Wally Byam's circa 1938 designs. Airstream had stopped manufacturing (and abandoned its designs) for approximately a decade between the end of the Great Depression to the end of World War II (from 1939 to 1947). Airstream was ultimately later acquired by Thor.

    7.    For the last several years (since at least April 2015), Thor has offered its Airstream aluminum "travel trailers" in eight specific models: (a) the Basecamp, (b) the Sport, (c) the Flying Cloud, (d) the International Signature, (e) the International Serenity, (f) the Tommy Bahama, (g) the Globetrotter, and (f) the Classic (pictured above) (collectively the "Airstream Models").

    8.    All of the eight current aluminum "travel trailers" models by Thor, include either a wrap-around window pane and/or three sections of window panes proximate the front of the travel trailers (hereinafter the "Airstream Three-Window Design"), as shown and depicted below:





The Globetrotter           The Tommy Bahama           The International Serenity







| The BaseCamp | The Sport | The International Signature |
|---|---|---|

As shown above (as well as at [www.AirStream.com/travel-trailers](www.AirStream.com/travel-trailers)), none of Thor's eight current Airstream Models include aluminum / silver coloring consistent with the dotted outlines provided in U.S. Trademark Registration No. 3,534,143, which was intended to show the position of the color on Thor's travel trailers.

9.      TTI is a corporation formed and organized under the laws of the State of Nevada, located at 653 South Saginaw Street, Saginaw, Michigan 48502.  TTI owns various purported intellectual property regarding and relating to a variety of Thor Industries' camper and trailer designs, including designs associated with its Airstream Division.  This includes U.S. Trademark Registration No. 3,534,143 issued by the United States Patent & Trademark Office ("USPTO") for the following highly functional "travel trailer" camper design (the "Trade Dress-in-Suit"):



A true and correct copy of U.S. Trademark Registration No. 3,534,143 is attached hereto as **Exhibit A** and the prosecution history is attached as **Exhibit B**.  As shown, the description of the mark reads how:

[t]he mark consists of the combination of **the color silver** as applied to travel trailers and a configuration of the trailers comprising **generally quarter-spherical leading roof lines and an overall curvilinear appearance**. **The dotted outline of the goods is intended to show the position of the color portion of the mark on the goods** and is not part of the mark (emphasis added).

As such, Thor's Trade Dress-in-Suit requires both a trailer having (a) the color silver, and (b) generally quarter-spherical leading roof lines and an overall curvilinear appearance. Upon information and belief, TTI licenses certain rights to U.S. Trademark Registration No. 3,534,143 to Thor Industries and/or its Airstream Division.

10.     As shown above, Thor – upon information and belief – is no longer using (nor has the intent to continue use) the claimed silver / aluminum color positioning for its travel trailers and instead has abandoned this purported trade dress design. Now, Thor (via its Airstream Division) employs a completely different Airstream Three-Window Design, as employed in its current eight Airstream Models (shown above). As such, Thor (specifically TTI) has abandoned rights to U.S. Trademark Registration No. 3,534,143 (which is now unenforceable). The registration is also invalid due to the fact that the "*overall curvilinear appearance*" offer functional benefits, namely improved aerodynamics for purposes of reduced drag. In addition, the "*generally quarter-spherical leading roof lines*" offer independent functional benefit, namely, increased rigidity. As further evidence of functionality, the silver color of polished aluminum is an inherent characteristic of the material and is aesthetically pleasing – such that Silver Steak would be at a competitive disadvantage if it was precluded from using silver for its own travel trailers.

11.     Put another way, Thor's current "travel trailer" design for its Airstream Models includes a primarily functional design having a plurality of six curved transverse ribs (what they call "generally quarter-spherical leading roof lines") located about the trailer front. However, this design element is highly functional, as the positioning, location and effect of the six transverse ribs

is not for appearance or aesthetics – but instead used to create rigidity and/or increase the strength of the front of the trailer.  As such, the six curved ribs are *wholly functional and cannot constitute any form of trade dress* protectable under either Florida common law or the Lanham Act.

12.     None of the eight Airstream Models includes a single pronounced curved vertical transverse rib stretching from the top of the trailer through the front, ending at the base (bottom) of the front of the trailer.  Likewise, none of those Airstream Models includes two mirror imaged horizontally elongated windows on the front of the trailer (*i.e.,* the "Alien Eyes" design), both positioned equidistant about the single pronounced vertical transverse rib.

13.     As shown below, the overall design, look, and appearance of (a) Thor's abandoned trade dress, (b) the current eight Airstream Models, and (c) the purported Trade Dress-in-Suit is very different (and sufficient to prevent any form of likelihood of consumer confusion) compared to the Silver Streak Clipper Design:

  

**Thor's (Abandoned)**          **Thor's Current**                    **Silver Streak's**
**Trade Dress-in-Suit**         **Airstream Three-Window Design**     **Clipper Design**

14.     Accordingly, as set out in greater detail below, this is an action by Silver Streak against Thor for declaratory judgment that Silver Streak's use in interstate commerce of its various towable all aluminum camper designs (including those acquired through certain releases and permission of those formerly associated with the Predecessor Company) do not infringe any trademark, trade dress, and/or other alleged rights purportedly owned by Thor – including with

regards to Thor's aforementioned highly functional aluminum constructed recreational camper trailers designs based upon the limited rights associated with **Exhibit A**.

15.     This Court has jurisdiction of the subject matter under 28 U.S.C. § 1338, 1331 and 201 and the United States Trademark Act at Title 15 of the United States Code.

16.     Jurisdiction and venue are appropriate over Defendants because they sell, offer for sale, market, advertise, and sell their Airstream trailer campers throughout Florida, including at the following three brick-and-mortar locations (which include patrons located in Martin County):

| North Trail RV Center of South Florida | Orlando RV | Tampa RV |
|---|---|---|
| 5270 Orange River Blvd Ft Myers, FL 33905 Phone: 239-693-8200 | 860 West Fairbanks Ave Winter Park, Florida 32789 Phone: 407-409-7707 | 4656 McIntosh Road Dover, Florida 33527 Phone: (813) 659-0008 |

In addition, Defendants actively market, advertise and promote their Airstream trailer campers to customers throughout the Southern District of Florida, including in Martin County, Florida via their comprehensive website www.AirStream.com.

### STATEMENT OF FACTS

### Silver Streak and its Distinctive Camper Design

17.     Headquartered in Stuart, Florida, Silver Streak designs, makes, assembles, manufacturers high-quality and highly customizable all-aluminum towable campers:

  

18.     Prior to its formation, Silver Streak's founders gained valuable experience in the restoration of various vintage aluminum constructed trailer campers.  Based upon this experience, it soon became apparent that the overall design of Thor's Airstream Models lacked certain benefits of a more modern trailer camper due to their mass production.  This included a lack of aluminum flooring – and the risk of gradual softening of the flooring structure, especially in more humid climates such as in the southern United States.  In addition, while Airstream Models included approximately *six curved transverse ribs* at the front of the trailer (ie, also known as "generally quarter-spherical leading roof lines") – those designs were originally for travel trailers made prior to the use of modern Interstate travel (*i.e.,* for speeds less than fifty miles per hour).

19.     Accordingly, Silver Streak's founders looked for a vintage aluminum constructed trailer camper design, which would allow for an all-aluminum construction (including the floor) as well as increased number of curved transverse ribs to increase structural rigidity for modern Interstate travel.  Based upon refurbishing approximately thirty (30) vintage model designs from the Predecessor Company, it soon became apparent that the Clipper Design would afford improved aerodynamics, as well as continue with a vintage aesthetic (see below 1952 advertising touting how the Clipper Design allowed for higher speed use):



The Clipper Design afforded *ten curved transverse ribs*, in addition to a larger single vertical curved transverse ribs.  Such combination of *eleven transverse ribs* – compared to the Airstream Model's *mere six curved transfer ribs* –doubles the structural integrity of the Silver Streak design.

20.     In forming Silver Streak, it was also apparent that "Silver Streak" had not been in production for some 20 years.  The Predecessor Company was not manufacturing and/or actively marketing the Clipper Design.  Despite the gap in manufacturing, these trailers continued to be custom-improved by enthusiasts, and likewise re-configured and resold in the recreational vehicle industry, as well as there was a continuous "cult" following via Internet forums like "Air Forums":



Thus, for the last twenty years, there has been considerable interest in the purchase, notoriety,

goodwill, and repute regarding renovation and resale of vintage "Silver Streak" aluminum trailers.

21.     Accordingly, the founders of Silver Streak researched with the State of California's business entity search, and determined the following information:



22.     This led them to identify Rolf Zuschlag as the last known owner of the Predecessor Company – which was corroborated by publicly available information from information posted by Silver Streak enthusiasts on "Air Forums":

*See    generally,*    http://www.airforums.com/forums/f348/the-final-silver-streak-ever-made-158198.html (last viewed Apr. 10, 2018).

23.     In February 2016, the founders of Silver Streak negotiated certain rights with Rolf Zuschlag regarding and relating to the Predecessor Company in the form of a "Release" as well as later obtained certain permissions and rights in the underlying camper designs and configurations.

24.     Based upon securing the rights and related release, Silver Streak was formed and incorporated in May 2016, with the State of Florida.  It is owned and managed by Elina Dillon.

25.     On May 30, 2016, Silver Streak issued an official announcement that it had reached an arrangement with the Predecessor Company (by way of written release) and that Silver Streak would be manufacturing aluminum campers based upon the original Clipper Design:

> Officially announced today, we're Silver Streak Trailer Co. LLC and building an updated version of the original Curtis Wright and Silver Streak Clippers, in various sizes and forms!  After owning close to 30 of these awesome original 1946 designed aircraft body travel trailers, my husband was the perfect steward to bring this design back to life. . . . We've owned them and been camping in them, tearing them down and rebuilding them, and now, building them brand new from the original patterns and plans, with the original name secured by receiving the rights to it from the last owner of Silver Streak, Rolf Zuschlag.
>
> Careful planning has been taking place for the past year, with all the design work, as well as the updating of all the materials to be used. We're building with the original Alclad 2024 T3 .032" sheet for all skins, we're eliminating ALL wood from the trailer structure, which will result in the end of the floor failures that are the death of almost every brand of camper on the market.
> ****
> We're improving the overall strength of the body by using C channel in 1/8" thickness for all the body frame bows and adding bows to the original design- this is where the monocoque design gets its internal support from, and we're using material over double the original thickness.
> ****
> The design changes will be applied to new body styles and forms, but all with the original Alien Eye front and rear end caps, those have been digitized and are exactly as they were in 1946 on the earliest Curtis Wrights, which we took one apart to get the measurements exactly copied to the millimeter.

See     https://www.facebook.com/SilverStreakTrailerCompany/posts/1028063880592139     (last viewed Apr. 10, 2018).

26.     By June 2016, Silver Streak engaged Craig Dorsey of Vintage Vacations (www.Vintage-Vacations.com) (for purposes of designing the interiors of the planned Clipper Design's vintage trailers.

27.     Based upon the internal designs of Vintage Vacations as well as Silver Streak's exterior designs and improved modernizations, Rolf Zuschlag from the Predecessor Company further approved and consented to the use of the Clipper Design, as corroborated by the following:



*See* https://www.facebook.com/SilverStreakTrailerCompany/photos/a.1028063870592140.10737418 28.999639340101260/1037048889693638/?type=3&theater (last viewed Apr. 10, 2018).

28.     Since June 2016, Silver Streak has offered for sale four versions of its trailered camper based upon the Clipper Design – specifically (a) a 13' Clipper, (b) a 16' Clipper, (c) a 22' Clipper and (d) a 28' Clipper, through the following designs:



Silver Streak focuses on customized orders in both the United States as well as Europe. Based upon the customized nature of these purchases and the high cost of these aluminum trailer campers Silver Streak's customer base is highly sophisticated (thereby making a highly informed purchasing decision).

29.     Silver Streak has used – as both its design inspiration as well as to ensure continued brand continuity, an original 1948 Clipper, to ensure consistency with its designs:



30.     In fact, Silver Streak has endeavored to match its bodies down the rivets of its *ten curved transverse ribs*, as well as its *eleventh vertical transverse rib*, for the dual purpose of not only ensuring a historically accurate vintage design but also to ensure that its designs differ and do not risk any form of trade dress infringement with Thor's Airstream:



31. Based upon its advertising, marketing, and promotion over the past two years, Silver Streak has developed trade dress rights associated with the distinctive designs and configurations of its aluminum constructed trailer campers. In addition, it has obtained both goodwill and repute regarding its vintage designs, high quality construction, and attention to detail.

32. Accordingly, Silver Streak maintains a different consumer base compared to Thor's retail specific sales of the Airstream Models. This is also because they have different designs, different sizes, and focus on different customer bases (with different underlying price points).

33.     Silver Streak has not experienced any form of actual confusion based upon use of the Clipper Design regarding either the purported TTI Trade Dress-in-Suit and/or the more recent Airstream Three-Window Design.

**The Trade Dress-in-Suit**

34.     As previously noted, TTI filed an application before the USPTO on or about October 21, 2005 for the following "travel trailers" design:



Based upon the different shading between the windows and the trailer, it appears that TTI (throughout prosecution and ultimate registration) is claiming the size and positioning of these windows as part of its design.

35.     USPTO examining attorney Toni Hickey issued an Office Action on May 16, 2006 rejecting TTI's underlying application for multiple reasons for this travel trailer design, including due to TTI's efforts to claim the color silver for a trailer, noting:

> Registration is refused because the proposed color mark, consisting of color applied to the identified goods, is merely an ornamental or decorative feature of such goods and thus would not be perceived as a trademark.
>
> ****
>
> the use of color on recreational trailers/campers is common in the industry.  Purchasers are unlikely to recognize a particular color as a source indicator for the goods.  Accordingly, registration is refused.

17

Trademark Examining Attorney Toni Hickey also requested additional information from TTI, including:

- "Whether competitors produce the goods in the identified color(s) and in colors other than the identified color(s)";

- "color photographs and color advertisements showing competitive goods"

- "The applicant must state for the record whether the goods are made of the element silver or aluminum."

36.    On August 2, 2007, TTI, through its outside counsel, filed a formal written response to the May 16, 2006 Office Action, which represented and conceded that the mark:

> Consists of the color silver as applied to travel trailers.  The dotted outline of the goods is intended to show the position of the mark on the goods and is not part of the mark.

TTI went further to state that the "trade dress consists of the unusual shape of Applicant's travel trailers in combination with the silver exterior of those trailers."  In addition, TTI represented to the USPTO that "***Airstream [ ] is the only travel trailer manufactured in the United States whose trailers are silver***" (emphasis added).

37.    On January 30, 2007, Trademark Examining Attorney Toni Hickey issued a second Office Action.  This included a formal rejection of TTI's proposed design application based upon the functionality of the color silver:

> In this case the applicant seeks to register the color silver as applied to travel trailers.  The applicant stated that the goods are constructed of aluminum.  **The color silver is a natural by product of goods manufactured from aluminum**.  Please see the attached dictionary definitions describing aluminum as "silver" in color.  Accordingly, **appropriation of this color by the applicant would place other trailer manufacturers who utilize aluminum at a competitive disadvantage** (emphasis added).

38.     On August 2, 2007, TTI, through its outside counsel, issued a response to the January 30, 2007, second Office Action, noting:

> the Trade Dress consists of the distinctive, unusual shape of Applicant's travel trailer in combination with the silver exterior of those trailers. ***Applicant is not trying to register the color silver for travel trailers***; it seeks to register the color silver in connection with the specific, distinctive shape of the travel trailer depicted in the drawing and specimens submitted with the application (emphasis added).

39.     On September 7, 2007, Trademark Examining Attorney Toni Hickey issued a third Office Action.  For yet a third time, the USPTO rejected TTI's application based on functionality:

> Registration was refused because he proposed mark identifies a color that is deemed functional for the identified goods, then it is not registrable on the Principal Register under §2(f), or the Supplemental Register.  TMEP §1202.05(b).  The applicant did not submit any arguments in response to this refusal.  Accordingly, the refusal is *maintained and continued*.

40.     On October 12, 2007, TTI, through its outside counsel, issued a response to the September 7, 2007 third Office Action stating again that Airstream was "***not trying to register the color silver for travel trailers***" and would "***disclaim the exclusive right to the use of the color silver . . .***" (emphasis added).

41.     Based upon this, an Examiner's interview as conducted on July 2008, which noted that TTI agreed to a further and more limiting description of goods, namely how:

> The mark consists of the combination of the color silver as applied to travel trailers and a configuration of the trailers comprising generally quarter-spherical leading roof lines and an overall curvilinear appearance.  **The dotted outline of the goods is intended to show the position of the color portion of the mark on the goods** and is not part of the mark.

42.     The USPTO issued U.S. Trademark Registration No. 3,534,143 based upon the foregoing prosecution history, including based upon TTI's representations that no other manufacturer made or offered silvertrailer campers and polished aluminum trailer campers by

extension.  In addition, TTI represented on multiple occasions to the USPTO that Thor was ***"not***

***trying to register the color silver for travel trailers***[.]"

43.     Upon receipt of U.S. Trademark Registration No. 3,534,143, Thor Industries

President – Bob Wheeler – publicly acknowledged via a November 18, 2008, interview how the

USPTO "was fearful it would provide too broad protection (sic)" thus admitting the over breadth

of the underlying registration, as noted below:

## Airstream Gains Trademark for Trailer Design

November 18, 2008 by Sherman Goldenberg  Comments Off on Airstream Gains
Trademark for Trailer Design                                             Print

Airstream Inc. recently received trademark approval from the U.S. Patent and Trademark Office for the design
of its unique spherical silver travel trailer.
"It's kind of a big deal for us," reported Bob Wheeler, president of the Jackson Center, Ohio, manufacturer. "We
fight trademark infringement all the time, not usually in the RV industry, but from people making T-shirts, belt
buckles, hats – things like that – with Airstream's image. Their defense has been that the shape of the trailer
was used by others in the 1950s."
In legal jargon, the trademark consists of "the combination of the color silver as applied to travel trailers and a
configuration of the trailers comprising generally quarter-spherical leading roof lines and an overall curvilinear
appearance."
"It's the combination of the silver and the curved body shape," Wheeler noted.
It took three years for the trademark to be approved "because (the patent offices) was fearful it would provide
too broad protection," Wheeler said.
That problem was overcome when the matter was assigned to an administrative judge who was an RVer. "He
understood better that the Airstream shape has been burned into the minds of Americans," Wheeler said.

### Thor's Allegations of Trade Dress Infringement

44.     On March 9, 2018, Thor, through its in-house counsel, issued a cease and desist

letter directed to Silver Streak which asserted purported rights in U.S. Trademark Registration No.

3,534,143.  Despite the foregoing representations made during prosecution before the USPTO,

Thor asserted in its written demand how it maintained exclusive and incontestable rights to

preclude others from using the color silver for aluminum constructed trailers stating how its "***Trade***

***Dress***" was "***the iconic silver travel trailer***."  A true and correct copy of the March 9, 2018 demand

is provided as **Exhibit C** hereto (the "Thor Demand Letter").

45.     The Thor Demand Letter further required that Silver Streak "cease and desist from all use, marketing, and sale" of any of its trailer designs "and to refrain from any use" of the color silver for any and all travel trailer designs.  Otherwise, Thor would "pursue in court" its "several remedies" under the Lanham Act.  In short, Thor demanded that unless Silver Streak stopped making any form of silver colored aluminum tailors, Thor would filed suit for trade dress infringement.

46.     The Thor Demand Letter failed to provide any comparison of Silver Streak's Clipper Design with the U.S. Trademark Registration No. 3,534,143.  Likewise, Thor was awkwardly quiet regarding and relating to the fact that it no longer actually used the trade dress design shown in U.S. Trademark Registration No. 3,534,143, but instead had abandoned the color positioning claimed in that design; instead opting for the Airstream Three-Window Design.

47.     The foregoing written threat by Thor – in the form of the Thor Demand Letter – was clearly orchestrated to strike fear in the legitimate actions of Silver Streak, regarding the design and promotion of its aluminum constructed trailers campers.

48.     These threats were timed specifically when Silver Streak was launching a new product into the RV space – with the hope of improperly employing U.S. Trademark Registration No. 3,534,143 to preclude any entrance of a silver colored aluminum travel trailer into the market.

**<u>Grounds for Silver Streak's Request for Declaratory Relief against Thor</u>**

49.     Thor – via the Thor Demand Letter – assert that Silver Streak's Clipper Design :



results in trade dress infringement of TTI's U.S. Trademark Registration No. 3,534,143, which

creates a real and substantial controversy regarding Silver Streak's rights to continue to advertise,

market, and promote its all-aluminum silver colored constructed travel trailer.

50.    Lastly, there is a true and bona fide controversy whether Defendants can even

suggest trade dress infringement based upon its current trademark registration, as Defendants no

longer offer travel trailers with the claimed silver / aluminum color positioning:



Instead, Defendants offer the following trade dress regarding their trailer having a three-panel

window configuration:



51.     Accordingly, a bona fide, actual, present and practical need for the requested declaratory judgment exists as a result of the trade dress or trademark-related infringement allegations claims of other violations of proprietary rights currently threatened by Thor.

52.     A presently ascertained or ascertainable state of facts or a present controversy about the state of facts relating to these claims exists.

53.     Silver Streak's right to a declaratory judgment that it has not infringed (and is not infringing) any trademark or trade dress rights or other proprietary rights relating to Thor depends upon the facts stated herein.

54.     Defendants have an actual, present, and adverse interest in the subject matter of this request for declaratory judgment, as they are contending that Silver Streak has infringed Defendants alleged trademark or trade dress rights and violated other proprietary rights.

55.     Thor's adverse interest in this request for declaratory judgment is properly before this Court.

56.     On information and belief, the declaratory judgment requested by Silver Streak is not the subject of any other pending court proceeding and depends on facts presently before the Court and is not a request for an advisory opinion.

## COUNT I

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### REGARDING DEFENDANTS' TRADEMARK REGISTRATION

57.     Silver Streak restates and incorporates by reference into this Count I the allegations of paragraphs 1 - 56 above as if fully stated herein.

58.     This is an action against Defendants for declaratory judgment that Silver Streak has not infringed (and is not infringing) any trade dress and/or trademark rights Defendants may have under the Lanham Act (including those listed and identified in **Exhibit A**) or other statutes or law.

59.     Defendants have no right to limit or exclude Silver Streak from designing and offering camper trailers made of aluminum and/or having a silver coloring - as "appropriation of this color by [Thor] would place other trailer manufacturers who utilize aluminum at a competitive disadvantage" as noted by the examining attorney who reviewed the application which became U.S. Trademark Registration No. 3,534,143.

60.     Similarly, Defendants have no right to restrict Silver Streak from using a plurality of transverse ribs located about the front of the trailer to afford reinforced rigidity of the front of the trailer frame (and/or rounded curvature to afford improved aerodynamics).  Those are clearly functional in nature – and provide not only improved airflow (and reduced drag) but also afford improved strength and rigidity to the camper.

61.     Furthermore, as shown by the following comparison, there is no likelihood of confusion because the appearance and shape of the Trade Dress-in-Suit as depicted by U.S. Trademark Registration No. 3,534,143 is sufficiently different than the Silver Streak Clipper Design (with its two "Alien Eye" window arrangement):

  

| | | |
|---|---|---|
| **Thor's (Abandoned) Trade Dress-in-Suit** | **Thor's Current Airstream Three-Window Design** | **Silver Streak's Clipper Design** |

62.     Silver Streak is, therefore, entitled to a declaratory judgment that it does not infringe any of trademark or trade dress rights alleged regarding or relating to U.S. Trademark Registration No. 3,534,143.

<u>COUNT II</u>

<u>CANCELLATION OF TRADEMARK REGISTRATION NO. 3,534,143 UNDER 15 U.S.C. § 1127 AND § 1064 DUE TO ABANDONMENT</u>

63.     Silver Streak restates and incorporates by reference into this Count II the allegations of paragraphs 1 - 56 above as if fully stated herein.

64.     This is an action against Defendants for cancellation of U.S. Trademark Registration No 3,534,143 based upon Thor's (via its Airstream Division's) discontinued use of the color positioning claimed for its purported trade dress for travel trailers with the intent not to resume such use, and that Defendants have had at least three (3) consecutive years of non-use of such trade dress in the ordinary course of its trade.

65.     Defendants, since as late as April 2015, discontinued use of  trailer designs with aluminum / silver coloring consistent with the dotted outline of the goods depicted below, which Thor intended to show the position of the aluminum / silver color portion of the mark as applied to travel trailers.:



Such decision to discontinue was with the intent not to resume use of the foregoing design.

66.     Since at least April 2015 (if not earlier), Thor has instead adopted and began use of the Airstream Three-Window Design, as shown by the following examples:



The Globetrotter                    The Tommy Bahama                    International Serenity

The BaseCamp                    The Sport                    The International Signature

67.     As such, Silver Streak hereby petitions this Court as it believes it has or will be damaged and/or prejudiced as a result of the continues registration of United States Trademark Registration No 3,534,143 and because the registration of such mark has become abandoned within the meaning of 15 U.S.C § 1127.

## COUNT III

### CANCELLATION OF TRADEMARK REGISTRATION NO. 3,534,143 UNDER 15 U.S.C. §§ 1119 AND 1115(b)(8) DUE TO FUNCTIONALITY

68.     Silver Streak restates and incorporates by reference into this Count III the allegations of paragraphs 1 - 56 above as if fully stated herein.

69.     There exists an independent basis to seek cancellation of U.S. Trademark Registration No 3,534,143 based upon the functionality of the underlying design – including but not limited to the fact that the curvilinear appearance is purely for improved aerodynamics and reduced friction (drag) during transport of the travel trailer, and that the silver color of the exteriors is a direct result of an inherent characteristic of polished aluminum.  These aspects are also common everyday design characteristics in the RV industry.

70.     Allowing Thor to maintain a monopoly on a curvilinear appearance and polished aluminum on the exterior of travel trailers will put Silver Streak at a significant non-reputational-related-disadvantage.

71.     As such, Silver Streak hereby petitions this Court to cancel United States Trademark Registration No 3,534,143 under 15 U.S.C. § 1119 because the mark is functional within the meaning of 15 U.S.C. § 1115(b)(8) and Silver Streak will be damaged and/or prejudiced as a result of the continued registration.

## COUNT IV

### DECLARATORY JUDGMENT OF NO VIOLATION OF FEDERAL AND STATE COMMON LAW RIGHTS OF DEFENDANTS

72.     Silver Streak restates and incorporates by reference into this Count III the allegations of paragraphs 1 - 56 above as if fully stated herein.

73.    This is an action against Defendants for declaratory judgment that Silver Streak has not violated (and is not violating) Federal or Florida State common law rights claimed by Defendants regarding the shape, configuration and/or associated appearance of its Airstream aluminum trailers – including but not limited to 15 U.S.C. § 1125(a).

74.    Defendants claim to have superior and/or exclusive common law rights actionable under 15 U.S.C. § 1125(a) – in addition to its rights associated with purported rights under U.S. Trademark Registration No 3,534,143.  These include, but are in no way limited to, rights associated with its Airstream Models.  Such rights, according to Defendants, prohibit the manufacture of silver colored aluminum towable camper trailers – including those with any form of aerodynamics that help reduce wind-flow fiction (drag) while transporting such trailers.

75.    However, there are distinct differences in the overall shape, configuration and appearance of Silver Streak's Alien Eye double windows, compared to Defendant's Three Panel Window design.  In addition, there are distinct differences in the overall shape, configuration and appearance of Silver Streak's Clipper Design, compared to the underlying trade dress asserted by Defendants.

76.    Silver Streak is therefore entitled to a declaratory judgment that (a) the Silver Streak's Alien Eye double windows design, and (b) the Silver Streak's Clipper Design does not infringe any Federal and/or Florida state common law rights that Defendants may have regarding aluminum constructed Airstream camper trailers and that Silver Streak has sufficient rights and abilities under 15 U.S.C. § 1125(a) as well as the common law of Florida to continue to advertise, market, promote, manufacturer, offer for sale and sell its camper designs as previously identified herein.

**JURY REQUEST**

Silver Streak requests a trial by jury on all issues so triable.


**PRAYER FOR RELIEF**

WHEREFORE, Silver Steak respectfully prays that this Honorable Court enter such Orders and Judgments as are necessary to grant Silver Streak the following relief:

(a)     A declaratory judgment that Silver Streak's use of the Clipper Design does not infringe any trademark or trade dress rights (including those identified in **Exhibit A**) registered through the USPTO and owned by Thor;

(b)     A declaratory judgment that Silver Steak's aluminum constructed towable camper design, including:

> (i)     a plurality of curved transverse ribs located about the front of the trailer;
>
> (ii)    a single pronounced curved vertical transverse rib stretching from the top of the trailer through the front, ending at the base (bottom) of the front of the trailer; and
>
> (iii)   two mirror imaged horizontally elongated windows on the front of the trailer, both positioned equidistant about the single pronounced vertical transverse rib (known as the "Alien Eye" design).

does not infringe any common law trademark or related common law trade dress rights owned or maintained by Thor (under Federal and/or Florida State laws).

(c)     A declaratory judgment that Silver Steak's aluminum silver colored constructed towable camper design, including the following:



does not infringe any common law trademark or related common law trade dress rights owned or maintained by Thor.

(d)     A declaratory judgment that Thor has abandoned its use of the aluminum / silver coloring positions claimed in the following towable camper design that Thor claims trade dress rights in:



=

(e)     A declaratory judgment that the following aluminum silver colored constructed towable camper design:



includes certain functional elements, including the curvature curvilinear appearance that affords improved aerodynamics (and therefore reduced drag) and that the silver color of the exterior is an inherent characteristic of polished aluminum,  which constitute elements that are not protectable under the Lanham Act and/or trade dress law.

(f)	A declaratory finding that Silver Streak does not infringe or otherwise violate any Florida common law trademark and/or associated State trade dress rights belonging to Thor;

(g)	A finding that this is an exceptional case under the Lanham Act, and an award of Silver Streak's reasonable costs and attorneys' fees under the Lanham Act, or any other statutes or laws under which Thor is seeking relief related to Silver Streak's use of the Clipper Design; and

(h)	Such other relief as this Court deems appropriate.

Respectfully submitted this July 12, 2018.

*/s/ Robert H. Thornburg*

Robert Thornburg
Florida Bar No. 630829
E-Mail: rthornburg@allendyer.com
Joshua B. Spector
Florida Bar No. 584142
E-Mail: jspector@allendyer.com
Cameron C. Murphy
Florida Bar No. 125086
E-Mail: cmurphy@allendyer.com
ALLEN, DYER, DOPPELT
+ GILCHRIST, P.A.
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone:     (305) 374-8303
Facsimile:     (305) 374-8306

*Counsel for Plaintiff*
*Silver Streak Trailer Company LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2018, I presented the foregoing to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a Notice of Electronic Filing to Counsel of Record:

Matthew S. Nelles
Florida Bar No. 009245
E-Mail: mnelles@bergersingerman.com
Caitlin M. Trowbridge
Florida Bar No. 92113
E-Mail: ctrowbridge@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301
Telephone: (954) 525-9900
Facsimile:  (954) 523-2872

*Counsel for Defendants*

*/s/ Robert H. Thornburg*

Robert H. Thornburg