## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:18-CV-14126-ROSENBERG/MAYNARD

SILVER STREAK TRAILER COMPANY,
LLC, a Florida Limited Liability Company,

    Plaintiff,

v.

THOR INDUSTRIES, INC., a Delaware
Corporation and THOR TECH, INC.,
a Nevada Corporation,

    Defendants

THOR INDUSTRIES, INC., a Delaware
Corporation and THOR TECH, INC.,
a Nevada Corporation,

    Counter-Plaintiffs,

v.

SILVER STREAK TRAILER COMPANY,
LLC, a Florida Limited Liability Company,

    Counter-Defendant,

and

PHILLIP DILLON, an individual, and
ELINA DILLON, an individual,

    Third-Party Defendants.

_____/

### PLAINTIFF/COUNTER-DEFENDANT
### SILVER STREAK TRAILER COMPANY, LLC'S
### <u>MOTION TO COMPEL DEFENDANTS' INTERROGATORY ANSWERS</u>

Plaintiff/Counter-Defendant Silver Streak Trailer Company, LLC ("Plaintiff" or "Silver Streak") moves to compel better interrogatory answers to Thor Industries, Inc. ("Thor Industries") and Thor Tech, Inc.'s ("TTI") (where Thor Industries and TTI are collectively referred to as "Defendants" or "Thor") responses to Plaintiff's First Set of Interrogatory Requests ("First Interrogatories") and states as follows:

## I.   Introduction

Thor is a publically traded recreational vehicle conglomerate that owns seventeen different recreational vehicle brands, including Airstream. As the Court correctly noted in its *Order on [Thor's] Motion to Compel* [D.E. 34], Airstream travel trailers are "built with an aerodynamic aluminum shell." Despite sparking this dispute through a cease and desist letter to Silver Streak entitled "Unauthorized Use of the AIRSTREAM Trade Dress," Thor's conduct shows an overt effort to evade resolution on the merits of the battle it started.

Court intervention is required to stymie Thor's efforts to evade legitimate and relevant discovery, and without such intervention Thor will be able, via the assertion of plainly functional trade dress, to squash an up and coming start-up company, run by an enthusiast husband and wife team with a history of refurbishing vintage aluminum travel trailers that only wish to resurrect an iconic American travel trailer brand – the Silver Streak Clipper.

## II.   Procedural Background and Conferral Efforts

Silver Streak served its First Interrogatories, consisting of eleven requests, to Thor on June 21, 2018. **Ex. A** (First Interrogatories). On July 18, 2018, Thor requested a two-week extension to respond to Silver Steak's First Interrogatories and First Requests for Production (First RFPs) (First Interrogatories and First RFPs collectively referred to as "First Requests") through and including August 6, 2018, which Silver Streak granted.

Thor, on July 31, 2018, requested a second two-week extension, through and including August 17, 2018, to respond to Silver Streak's First Requests on the premise that "we are working to *diligently* respond and gather responsive documents . . . (in order to *properly* respond to both the request[s] for production and interrogatories) we will need some additional time." **Ex. B** (Extension Request; July 31 1:19PM email from C. Trowbridge to C. Murphy). Silver Streak granted Thor's second requested extension and Thor – with the belief that the four additional weeks

1

were afforded to allow full and complete answers to Silver Streak's eleven initial interrogatories. On August 17, 2018, Thor finally served responses to Silver Streak's First Requests, including Thor's *Unverified* Answers to First Interrogatories From Plaintiff (the "Unverified Rog Responses"). **Ex. C** (Unverified Rog Responses). Tellingly, Thor did not produce any documents in conjunction with its responses or identify BATES ranges for Interrogatory responses that elected to produce documents in lieu of providing written responses.

On August 21, 2018, the Silver Streak and Thor held a phone call to discuss various issues in the case, which included Thor's recent deficient interrogatory responses. Silver Streak, to aid in the conferral process, provided Thor with a detailed and specific email regarding the issues with Thor's Unverified Rog Responses. **Ex. D** (Silver Streak Conferral Email). Silver Streak followed up approximately one week later in an effort to advance conferral efforts and Thor advised that it, even after its one-month long extension where it had worked to "diligently respond and gather document," and the almost two weeks that had elapsed since Thor provided responses, would provide production on a rolling basis without any such stipulation from Silver Streak.

On August 30, 2018 Thor further advised that it would provide revised and *verified* interrogatory answers; Thor served its Revised Answers to Counter-Defendant's First Set of Interrogatories (the "Revised Interrogatories") that same day. **Ex. E** (Revised Interrogatories). Thor, also on August 31, 2018, finally produced its first tranche of documents in the case. Thor produced a second tranche of documents on August 31, 2018, and a third tranche of documents on September 7, 2018.

Silver Streak informed Thor that the Revised Interrogatories did not address or ameliorate Silver Streak's concerns and that Silver Streak would have to seek judicial assistance if Thor maintained its limited and largely boilerplate answers. In response, Thor declined to further amend its interrogatories to afford any true response to Silver Streak's requests necessitating this motion.

### III.   Interrogatories

    a.   Interrogatory No. 1

This Interrogatory seeks information related to third party use of various attributes and components that are explicitly claimed in Thor's '143 Registration or present in Thor's actual use of the trade dress claimed in the '143 Registration. This Interrogatory is relevant to the potential

2

functionality of Thor's claimed trade dress for its aluminum formed aerodynamic travel trailer.

Thor's response includes numerous boilerplate objections including that the request is "oppressive," "overboard," "irrelevant," and that there is a "lack of importance of this discovery in resolving this issue" such that there is a "nonexistence of a single benefit to discovery." Thor also makes the argument that because trade dress must be evaluated as a whole examination of the individual attributes is improper and cites to *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197 (11th Cir. 2004) in support. Thor wholly misinterprets *Dippin' Dots*. The *Dippin' Dots* Court dealt with this *exact issue* and noted how individual product design features *must* be considered when viewing product design as a whole. *Id.* at 1203 ("The feature of product design that we must analyze in this case are the size, color and shape of dippin' dots"). Examination of these individual features was necessary to determine whether the "product design of dippin' dots in its individual elements and as a whole is functional under the traditional test" and "[f]unctional features are by definition those likely to be shared by different producers of the same product and therefore unlikely to identify a particular product. *Id.* at 1203-04.

After all of Thor's (ineffective) efforts to lodge multiple objections, its ultimate answer that "Thor is not aware of any producers of trailers bearing trade dress that infringes the Airstream registered trade dress" is a non-answer to the information Silver Streak requested.

   b. Interrogatory No. 2

Thor's response indicates that it will produce documents to answer this Interrogatory specific to Silver Streak's Requests for Production Nos. 57 and 58, which Silver Streak admits are directed to the same information sought by this Interrogatory, but does not identify any Bates ranges for production. This is because Thor's responses to Requests for Production Nos. 57 and 58 offer the wholesale objection that the requests are "disproportionate to the needs of the case" and "overbroad in time and scope," such that no documents would be produced. Thor cannot answer this Interrogatory by saying documents will be produced while simultaneously refusing to produce documents. Thor's response should be compelled as to Interrogatory No. 2.

   c. Interrogatory No. 3

Thor, which has counterclaimed that there is a likelihood of confusion between Silver Streak's Clipper Design and Thor's claimed trade dress, has refused to provide a comparison of

3

what aspects of Silver Streak's design correspond to the elements of the '143 Registration. Thor's response that the Silver Streak design "incorporates each and every element of the '143 Registration" does not put Silver Streak on notice of the aspect of its design that directly correspond to the elements of Thor's claimed trade dress. Thor's complete response, including a detailed comparison, should be compelled as to Interrogatory No. 2.

    d. Interrogatory No. 4

Thor has limited its response for licensing to "since [the date of the '143 R]egistration *to another producer to manufacture travel trailers bearing the subject trade dress*." (emphasis added). As further detailed in Silver Streak's Motion to Compel Documents, conferral efforts have uncovered that Thor has licensed rights related to the Trade Dress-in-Suit for various merchandising endeavors. Silver Streak is entitled to the requested information, and it is relevant to naked licensing issues and Thor's efforts to exert quality control over the disputed mark.

    e. Interrogatory No. 5

Thor's response objects to use of the word "strength" as vague and ambiguous; however, Thor alleges it has "strong rights in its trade dress." D.E. 21, ¶ 33. Thus, Silver Streak's request for Thor to "identify any documents that describe the strength of the Trade Dress-in-Suit" is anything but vague in light of Thor's own allegations. Thor's response to Interrogatory No. 5 should be compelled so Silver Streak can assess the veracity of Thor's allegations.

    f. Interrogatory No. 6

Thor responded to Interrogatory No. 6 by asserting documents will be produced in response to Silver Streak's Requests for Production Nos. 22-31, which seek similar information sought by this Interrogatory, yet Thor does not identify any Bates ranges. What is more, Requests Nos. 22-31 all ask for information from *the last ten years*, which was specifically chosen by Silver Streak because it is the time that has elapsed since issuance of the '143 Registration, yet Thor's responses to Requests Nos 22-31 all limit document production to items from *the last five years*. Thor thus seeks to arbitrarily and improperly limit the temporal scope of this Interrogatory through its responses to Silver Streak's document requests; even though the temporal scope of those requests are proper and thoughtfully chosen. A response should be compelled as to Interrogatory No. 6.

4

    g. <u>Interrogatory No. 7</u>

Silver Streak seeks information in Interrogatory No. 7 that is related to Thor's efforts to create a connection in the minds of consumers between Thor and its claimed silver colored trade dress. Thor's response does not provide a Bates range and instead denotes that it is unjustifiably withholding documents because Thor believes it is entitled to arbitrarily withhold production until "a time to be agreed upon by the parties." That said, there is a Stipulated Protective Order [D.E. 17] in place to protect this information should Thor deem it to be sensitive in nature.

    h. <u>Interrogatory No. 8</u>

Interrogatory No. 8 asks for information specific to "gross sales and profits attributable to the sale of goods that . . . match the '143 Registration." Thor, instead of providing the requested information, merely offers a link to publicly available annual reports for 2007-17 which fail to contain responsive information. Knowing full well that such was such was the case, Thor states that "documents will be furnished" without identifying any Bates ranges or when such documents would be produced. Thor should be compelled to respond to Interrogatory No. 8 by, at the very least, identifying applicable documents.

    i. <u>Interrogatories No. 9-11</u>

These three Interrogatories are all directed to the functional nature of aspects of Thor's claimed aluminum based trade dress, including the potential utilitarian benefits of elements thereof and potential inherent qualities thereof. This information is of seminal importance. Thor, knowing full well that its answers may impact the validity of its claimed trade dress, has lashed out with the objections that Silver Streak's requests are "illusory and meaningless" in light of the issuance of the '143 Registration. Thor cannot escape 15 U.S.C 11 § 1115(b)(8) which denotes how even a registration for trade dress that is "incontestable" is subject to attack on the basis of functionality.

**IV.** **<u>Conclusion</u>**

Each and every one of Thor's Revised Interrogatory answers did little to obviate its deficiencies or show any effort to compromise on the numerous issues Silver Streak laid out in its conferral effort. The only true deficiency Thor cured with its Revised Interrogatories was that they were actually *verified*. Silver Streak requests the Court compel better answers to for each of Thor's responses contained in its Revised Interrogatories as Thor's objections were boilerplate and its

5

responses were insufficient and evasive.

## Local Rule 7.1 Certificate

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned has conferred with counsel for Thor via telephone and through detailed email communications highlighting the above deficiencies, these efforts have been unsuccessful and resulted in little to no substantive changes in Thor's Revised Interrogatories.

Respectfully submitted on September 20, 2018.

> */s/ Robert H. Thornburg*
> Robert H. Thornburg, Esq.
> Florida Bar No. 630829
> E-Mail: rthornburg@addmg.com
> Joshua B. Spector
> Florida Bar No. 584142
> E-Mail: jspector@allendyer.com
> Cameron C. Murphy
> Florida Bar No. 125086
> E-Mail: cmurphy@allendyer.com
> ALLEN, DYER, DOPPELT
> + GILCHRIST, P.A.
> 1221 Brickell Ave., Suite 2400
> Miami, Florida 33131
> Telephone:    (305) 374-8303
> Facsimile:    (305) 374-8306
>
> *Counsel for Plaintiff / Counter-Defendant*
> *Silver Streak Trailer Company, LLC*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on September 20, 2018, I presented the foregoing to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a Notice of Electronic Filing to:

Matthew S. Nelles  
Florida Bar No. 009245  
E-Mail: mnelles@bergersingerman.com  
Caitlin M. Trowbridge  
Florida Bar No. 92113  
E-Mail: ctrowbridge@bergersingerman.com  
BERGER SINGERMAN LLP  
350 East Las Olas Boulevard, Suite 1000  
Fort Lauderdale, FL  33301  
Telephone: (954) 525-9900  
Facsimile:  (954) 523-2872  

*Counsel for Defendants / Counter-Plaintiffs*  
*Thor Industries, Inc. and Thor Tech, Inc.*

                                                  */s/ Robert H. Thornburg*  
                                                  Robert H. Thornburg, Esq.