## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:18-CV-14126-ROSENBERG/MAYNARD

SILVER STREAK TRAILER COMPANY,
LLC, a Florida Limited Liability Company,

       Plaintiff,

v.

THOR INDUSTRIES, INC., a Delaware
Corporation and THOR TECH, INC.,
a Nevada Corporation,

       Defendants.

THOR INDUSTRIES, INC., a Delaware
Corporation and THOR TECH, INC.,
a Nevada Corporation,

       Counter-Plaintiffs,

v.

SILVER STREAK TRAILER COMPANY,
LLC, a Florida Limited Liability Company,

       Counter-Defendant,

and

PHILLIP DILLON, an individual, and
ELINA DILLON, an individual,

       Third-Party Defendants.

_____/

**Plaintiff Silver Streak's Response to Defendants' Motion to Stay all Proceedings
Pending Determination that Court has No Subject Matter Jurisdiction [D.E. 46]**

Plaintiff/Counter-Defendant, SILVER STREAK TRAILER COMPANY, LLC ("Silver Streak" or "Plaintiff"), through its undersigned counsel, hereby responds to THOR INDUSTRIES, INC. ("Thor Industries") and THOR TECH INC'S ("TTI") (Thor Industries and TTI collectively referred to as "Defendants" or "Thor") *Motion to Stay all Proceedings Pending Determination that Court has No Subject Matter Jurisdiction* [D.E. 46] (the "Motion to Stay") and provides the following:

### I.    <u>Introduction</u>

The Eleventh Circuit Court of Appeals has made clear on multiple occasions, including in *Douglas v. United States,* 814 F.3d 1268, 1274-75 (11th Cir. 2016), that discovery must be permitted in a factual attack on subject matter jurisdiction: "in a factual challenge the district court must give plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *See also In re CP Ships Ltd. Securities Litigation,* 578 F.3d 1306, 1312 (11th Cir. 2009), abrogated on other grounds by *Morrison v. Nat'l Austl. Bank Ltd.,* 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

#### a.    **The Plainly Functional Airstream Trade Dress**

Thor's Motion to Stay and *Motion to Dismiss Case for Lack of Subject Matter Jurisdiction* [D.E. 44] are its last ditch attempt to avoid being compelled to produce damaging information directed to Silver Streak's declaratory claims for non-infringement and cancellation of Thor's '143 trade dress registration (based on functionality and abandonment), and Thor's own counterclaim. *See* D.E. 38 and 39; motions to compel.  Thor's motions are also thinly veiled attempts to avoid a judicial determination that its aluminum silver colored aerodynamic Airstream travel trailers are highly functional, and therefore not protectable under the Lanham Act. *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1203 (11th Cir. 2004) (under the "traditional test"

product feature are functional if they are "essential to the use or purpose of the article or it affects the cost or quality of the article" and "functional features are by definition those likely to be shared by different producers of the same product and therefore unlikely to identify a particular product"). Without a patent, competitors are free to copy other's functional features for use in their own products. *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1217 (8th Cir.), cert. denied, 429 U.S. 861 (1976).  If courts granted protection for functional trade dress, effective competition in the marketplace would be hindered; hence the exclusion of trade dress protection for functional features. *Isaly Co. v. Kraft, Inc.*, 619 F. Supp. 983, 991 (M.D. Fla. 1985).  In fact, Silver Streak and Airstream had coexisted in the marketplace for nearly forty-eight years (1949 until 1995) selling silver colored, aerodynamic travel trailers made of aluminum.[1]  Literature Thor produced also outlined the prior interrelation of the two travel trailer brands and Airstream's blog dedicates a post to how Airstream's founder, Wally Byam, actually worked for Silver Streak in the mid-1940s, after Silver Streak's founder, Curtis Wright, "contacted Wally and made him an offer to design and manage a new trailer venture." **Ex. A** (Airstream Blog Post: "Wally and the Curtis Wright Trailer"); *see also* D.E. 18, ¶ 25.

Thor's argument seeks to circumvent this dispute over the validity of its mark, which has nothing to do with Silver Streak's own record of sales.  Silver Streak's market participation bears no impact whatsoever on its ability, and standing, to challenge the validity of Thor's marks.[2]  And that's the real point of pressure in this action.  Notably, Thor gives no regard to this mutually exclusive dimension of the dispute before this Court in making its arguments to stay and object to

---

[1] Silver Streak's principal, Elina Dillon, acquired the rights to Silver Streak from Rolf Zuschlag, the prior owner, in 2016 in order to resurrect the brand and the travel trailer designs previously offered thereunder.

[2] Extensive details regarding Silver Streak's numerous preparation will be provided in the response to Thor's Motion to Dismiss.

subject matter jurisdiction.

Eleventh Circuit courts have identified advertising that touts the utilitarian advantages of a product as a way to help determine if a trade dress feature is primarily functional. *Sharn, Inc., v. Wolfe Tory Medical, Inc.*, 2009 U.S. Dist. LEXIS 97385 at *11-12 (M.D. Fla. 2009) (considering advertisements of a medical device touting functionality of its features that coincided with claimed trade dress features).  By way of example, the following are but a smattering in the voluminous instances Thor has publicly touted the many functional features of its claimed "silver colored, rounded, curvilinear travel trailers" (D.E. 21, ¶ 10), including the durability of aluminum, how aluminum is strong and light weight; the aerodynamic nature of the curvilinear shape; and increased stability and towing safety due to the aerodynamic design – *all  which is sourced from a single brochure that was the very first document Thor produced*:

- "Airstream travel trailers are world-renowned for their *superior structural integrity*. . . . aluminum is stretched and riveted to the frame, working as *an integral part of the structure* . . . this *aluminum skin offers unmatched durability and strength for its weight*."  D.E. 39-8, p. 7, (THOR000006).

- "Founder Wally Byam knew that *a rounded low-profile shape would make towing easier and more stable. And he knew that aluminum would make his trailers as light as possible . . . requiring less fuel and horsepower on your way to adventure*."



*Id.* p. 6, (THOR000005) (emphasis added).

- "We also work with nature, not against it. *Our low profile and rounded, slippery shape make for better towing in every respect. As a result, Airstreams enjoy a 20% advantage in towing efficiency over standard 'white box' trailers.* And over the life of your Airstream, that's a lot of fuel saved. In other words, Airstream has been green as long as it has been silver." *Id.* p. 5, (THOR000004) (emphasis added).

- "With a fanatical attention to *quality and functional design, Airstream consistently outperforms other travel trailers. Designed with exceptional rigidity and low center of gravity, Airstream offers far better stability and driving safety than their boxy counterparts.*" *Id.* (emphasis added).

Airstream's blog even dedicates posts to the silver color of its aluminum trailers, an inherent property of aluminum itself, and how it contributes to the aesthetically pleasing appearance of the travel trailers:

- "Airstreams are everywhere, and that means so is our favorite color: Aluminum! The Airstream's sleek and shiny exterior play a big part in the trailer's 'wow factor.'

The unmistakable curved aluminum exterior has led to the tried and true nickname, 'the silver bullet.'" **Ex. B** (Airstream Blog Post: "Spotted: Aluminum")

- "When a silver bullet is coasting down the highway, people tend to stop and take in the beauty and innovation of our classic travel trailer." *Id.*

- "Pantone has even dubbed Aluminum as one of the top colors for Fall 2014. Pantone cites Aluminum as 'a futuristic stainless steel shade that serves as a complex neutral.' We agree – we think the color aluminum can be incorporated into all parts of life!" *Id.*

Old Airstream owner's manuals tout how "the exterior is clad in pure aluminum to better withstand corrosion. Many trailers do not use this extra quality. We, at Airstream, feel that it is absolutely essential. Another reason Airstreams last so long." D.E. 32-2, p. 4.

This dispute over whether Thor's design is functional is pertinent to the validity of its marks. And aside from the validity of Thor's marks, that dispute is otherwise independent of the parallel dispute over declaratory relief. These are two silos. Even if Thor burns one down on a subject matter jurisdiction objection, there's grist for the mill in the second silo.

**b. Thor's Failure to Seek Dismissal of Silver Streak's Cancellation Claims**

It follows that Thor's Motion to Stay is mechanically ineffective because if this Court were to grant Thor's underlying Motion to Dismiss, only Silver Streak's claims for declaratory action (Counts I and IV) would be dismissed; Silver Streak's claims for cancellation of Thor's trade dress registration, Counts II and III arising under 15 U.S.C. §§ 1119 and 1115(b)(8) would persist.[3] The

---

[3] 15 U.S.C. §1119 provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1115(b)(8) provides that registered marks that have become "incontestable" are subject to attack on the basis "[t]hat the mark is functional."

Lanham Act provides that "[t]he district and territorial courts of the United States shall have original jurisdiction . . . , of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. §1121(a). In other words, granting the Motion to Stay would simply place an unnecessary hold on discovery, likely for at least a month until the Motion to Dismiss is resolved, even though there are multiple counts Thor does not contend the Court lacks subject matter jurisdiction over. *See, Broughton v. HPA Subway, Inc.*, No. 11-0036-WS-N, 2011 U.S. Dist. LEXIS 37654, at *2-4 (S.D. Ala. Apr. 5, 2011) (correctly identifying how discovery must be allowed to proceed in a factual subject matter jurisdiction attack and denying the underlying motion to dismiss because the motion ignored "an independent basis for subject matter jurisdiction").

Thor's request for a stay is tantamount to needless delay and is therefore detrimental to timely resolving this case on the merits because close of fact discovery is set for December 15, 2018, and a stay of the proceedings will also severely hamper the possibility of the parties' successfully mediating the case by the deadline of November 16, 2018.[4] *See,* D.E. 10.

### c. Thor's Cease and Desist Letter

Thor's Motion to Stay, and the Motion to Dismiss, also do not provide the Court with an accurate representation of the disputes and events giving rise to this this litigation – including Thor's conduct leading up to litigation.[5] Thor's entire Motion to Dismiss, and by extension the

---

[4] The parties had previously filed a notice with the Court that mediation would be held on October 10, 2018 before Harry Schafer [D.E. 20], but Thor's inability to tender its witnesses, and its recently filed Motions to Dismiss and to Stay, have caused the parties to agree that mediation is no longer feasible at this time and will be rescheduled upon agreement of the parties.

[5] Instead of addressing each and every one (Silver Streak will save its detailed analysis for the response to the Motion to Dismiss), Silver Streak will focus on Thor's cease and desist letter for current purposes because it effectively demonstrate the reality of the actual case or controversy when this action was initiated.

Motion to Stay, is predicated on whether Silver Streak has completed and sold a travel trailer, and that in the absence thereof, there can be no case or controversy.

This contention is myopic as framed because Silver Streak has also sought to cancel Thor's '143 Registration, an independent case and controversy that provides independent subject matter jurisdiction grounds. Moreover, a brief review of Thor's cease and desist letter explicitly details that *Thor contemplated Silver Streak might not have even started producing or selling travel trailers*. So, Thor's feverish revelation on market participation and purported lack of subject matter jurisdiction strains credulity. Thor reached into Florida, picked a fight on the basis of its purported intellectual property, and now Thor regrets it and does not want to submit to discovery. While understandable, Thor should be equitably estopped from now seeking a defensive respite from a fact it expressly knew or suspected before this dispute arose.

Thor also demanded constraints on Silver Streak's activities that went beyond the potential sale of travel trailers and included any marketing of Silver Streak via Facebook, and if Silver Streak did not comply, Thor would pursue remedies in Court. The Motion to Stay even acknowledges how Silver Streak "received Thor's letter requesting that it refrain from infringing [Thor's] trade dress." D.E. 46, p. 2, ¶ 2.

Thor's Motion to Dismiss represents that Thor would not have sent its cease and desist letter if it had known that Silver Streak had not produced any travel trailers. The letter, however, unequivocally contemplated that Silver Streak might not have produced or sold any travel trailers: "Airstream has recently learned that your company *intends* (or has already begun) offering for sale travel trailers under the 'Silver Streak Clipper' brand. *See,* D.E. 18-3, p. 2 (emphasis added). By Thor's own words Silver Streak's *mere intention* to produce travel trailer had created a case or controversy. *See, SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir.

2007):

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case. We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

The *SanDisk* decision arrived in the wake of *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007), which more firmly defined the jurisprudence surrounding the case or controversy requirement of the Declaratory Judgment Act and *Sandisk* been cited with approval in this district. *See, Insured Deposits Conduit, LLC v. SPFI, LLC,* No. 07-22735-CIV, 2008 U.S. Dist. LEXIS 107888, at *7 (S.D. Fla. June 24, 2008) (a dispute is real or substantial where a plaintiff is "seeking a declaratory judgement or contemplated and abandoned [a planned course of conduct] because of the patentee's coercion have been potentially illegal at the time of the claimed controversy").

What is more, whether Silver Streak had completed a travel trailer was also irrelevant to Thor because "the travel trailers *pictured on your company's [F]acebook page are confusingly similar to the Airstream Trade Dress. Consumers are likely to be confused as to the source of the products and/or are likely to believe your company is affiliated with, sponsored by, or endorsed by Airstream."* D.E. 18-3, p. 2 (emphasis added). In other words, Thor's own cease and desist letter plainly identified that Silver Streak's Facebook posts alone, some of which included renderings of future Silver Streaks and other that included photographs of vintage Silver Streaks, were enough to trigger consumer confusion that would form the basis of a trade dress infringement action because "your use of a confusingly similar product configuration and trade dress infringes

upon Airstream's exclusive rights and jeopardized Airstream's investment therein." *Id.*

The cease and desist letter also did not limit the remedies Thor would seek to impose on Silver Streak.  Thor, instead of only restricting its threats to Silver Streak's actual or potential production of travel trailers, insisted that Silver Streak must "cease and desist from all use, marketing, and sale of the infringing product and to refrain from any use of the Airstream Trade Dress (or confusingly similar variants) in connection with recreational vehicles."  *Id.* at p. 3.  It follows that any marketing or promotional materials on Silver Streak's Facebook page, or other forms of social media for that matter, which featured renderings of Silver Streak's silver colored, aerodynamic travel trailers would constitute the exact conduct that Thor wished Silver Streak to "cease and desist."  Thus, unless Silver Streak "confirm[ed], in writing, that your businesses has complied with the above request within fifteen (15) days of the date of this letter," Thor would resort to seeking "several remedies which [it] may pursue in court." *Id.*  A case or controversy requiring Silver Streak to seek declaratory action existed based on Thor's threat of suit if the issue was not amicably resolved:

> One who is subjected to charges of infringement and the threat of legal proceedings need not wait until his accuser chooses to bring suit to secure   a determination of his rights. *E.g., Topp-Cola Co. v. Coca-Cola Co.,* 314 F.2d 124, 125 (2d Cir. 1963). While CWMSC is correct that the filing of a TTAB action is not, on its own, sufficient to create an actual controversy, such is not the issue in this case where *it is undisputed that in addition to filing an opposition in the TTAB proceedings, CWMSC sent correspondence to HSI suggesting it would sue if its concerns "could not be settled on an amicable basis."* (Doc. No. 21, p. 26). The Supreme Court has recently instructed that in situations where the plaintiff's actions to avoid imminent injury are coerced by threatened enforcement action of a private party, lower federal courts "have long accepted jurisdiction in such cases." *Medimmune,* 127 S. Ct. at 773. In the instant case, CWMSC's course of conduct implies the threat of suit. Thus, the exercise of jurisdiction is valid. *E.g., G. Heileman Brewing Co. v. Anheuser-Busch, Inc.,* 873 F.2d 985, 990 (7th Cir. 1989).

*HSI IP, Inc. v. Champion Window Mfg. & Supply Co.,* 510 F. Supp. 2d 948, 955-56 (M.D. Fla. 2007) (emphasis added).

When Silver Streak filed this lawsuit, it was under the unequivocal threat from Thor that Silver Streak must stop all use, including its Facebook marketing, of Airstream's purported trade dress because there was a likelihood of consumer confusion between Silver Streak and Airstream as to source, sponsorship, and/or affiliation, and, if Silver Streak did not comply with Thor's demands, then Thor would seek Court intervention.  Thor even attached a declaration by Mollie Hansen ("Ms. Hansen"), Airstream's Chief Marketing Officer, that acknowledges and avers that "Airstream requested that its legal counsel send a letter requesting, among other things, that [Silver Streak] refrain from any use of the Airstream trade dress or any confusingly similar variants in connection with recreational vehicles." D.E. 44-19, ¶ 4.

Thor's current regret for sending Silver Streak a cease and desist letter, and whether it would may or may not have repeated the action in retrospect, does not serve as a basis to dismiss Silver Streak's Complaint or to stay the proceedings.

## II.   **Argument**

Under Federal Rule of Civil Procedure 12(b)(1), a party can bring either a facial or a factual challenge to a court's subject matter jurisdiction.  Thor's Motion to Dismiss does not mention the two standards; however, Thor's numerous evidentiary cites show the attack is factual rather than facial.  Accordingly, the Court will have to evaluate disputed material facts and weigh competing evidence.  *See Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir. 1990) ("since we adopt a summary judgment standard in evaluating Rule 12(b)(1) motions that also implicate the merits of a claim, the full panoply of protections afforded the party opposing such a motion will apply here").  The applicable summary judgement standard, and the Court's need to weigh competing facts, requires that discovery proceed uninterrupted (including the compelling of better interrogatory answers and documents that Thor is wrongfully withholding) as it will allow Silver Streak to

prepare a more complete record for the Court's consideration on the Motion to Dismiss.[6]  Further, the cases Thor cites in support of staying discovery are easily distinguishable because none deal with dismissal on a factual basis.

In *Rivas v. The Bank of New York Mellon*, 676 Fed. Appx. 926, 932 (11th Cir. 2017), the court granted the discovery stay because the issue before the court was purely legal and was not factual. The court also instituted the discovery stay at the very beginning of the lawsuit, prior to the defendants' submitting their motion to dismiss, which was based on plaintiff's failure to state a claim and failure to plead diversity jurisdiction. *Id.* at 928.  The *Rivas* court noted how the discovery stay was proper as "*there are no issues of fact* because the allegations contained in the pleading are presumed to be true. *Therefore, neither the parties nor the court ha[s] any need for discovery before the court rules on the motion.*"  *Id.* at 932 (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (emphasis added)).

The *Chudasama* court further remarked how "*[re]solution of a pretrial motion that turns on findings of fact . . . may require some limited discovery before a meaningful ruling can be made.*"  123 F.3d 1353, 1367 (emphasis added). Thor provides an extensive discussion of *Chudasama*, but neglects to identify that the primary reason a stay was appropriate was because "the fraud count dramatically enlarged the scope of the Chudasamas' case" and that the court's determination was not factual.  *Id.* at 1368.

Thor cites to yet another case, *Horsely v. Feldt,* 304 F. 3d 1125, 1131 n.2 (11th Cir. 2002)

---

[6] Thor's affidavit of Ms. Hansen should entitle Silver Streak to depose her, and others at Airstream, regarding the internal pattern and practice of sending cease and desist letters to third parties and identifying which situations were worth pursuing. Silver Streak notes that Thor has produced some fifteen cease and desist letters, but has refused to produce return correspondence from third parties. Silver Streak moved to compel this information and Thor's instant motion seeks to stymie Silver Streak's legitimate receipt thereof (in addition to other information helpful to Silver Streak's anticipated arguments).

that only dealt with facial standing and was directed to judgment on the pleadings. What is more, the footnote Thor cites to *specifically identifies this distinction*.

## III.   <u>Conclusion</u>

For the foregoing reasons, evidence, and authority, (1) the parties require discovery for factual attacks on subject matter jurisdiction; (2) the Motion to Stay and the Motion to Dismiss are mechanically ineffective because there is an independent basis for jurisdiction through Silver Streak's cancellation claims; and (3) Thor's cease and desist letter is the very definition of an event that creates a real, live controversy. Accordingly, Silver Streak requests that both Thor's Motion to Stay be denied and that the Court also find the information provided herein sufficient to deny Thor's Motion to Dismiss. Silver Streak further requests that Thor's failure to timely respond to Silver Streak's motions to compel [D.E. 38 and 39] serve as an independent basis to grant said motions because Thor filed this Motion to Stay with full knowledge that it may be denied, yet choose not to preserve its rights and provide timely responses.

Respectfully submitted on October 5, 2018.

<u>s/Robert H. Thornburg</u>
Robert H. Thornburg
Florida Bar No. 630829
E-Mail: rthornburg@allendyer.com
Joshua B. Spector
Florida Bar No. 584142
E-Mail: jspector@allendyer.com
Cameron C. Murphy
Florida Bar No. 125086
E-Mail: cmurphy@allendyer.com
ALLEN, DYER, DOPPELT
+ GILCHRIST, P.A.
1221 Brickell Avenue, Suite 2400
Miami, Florida 33131
Telephone:     (305) 374-8303
Facsimile:     (305) 374-8306

*Counsel for Plaintiff Silver Streak Trailer*
*Co. and Counter-Defendants SilverStreak*
*Trailer Co., Phillip Dillon, and Elina Dillon*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that October 5, 2018., I presented the foregoing to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a Notice of Electronic Filing to:

Matthew S. Nelles
Florida Bar No. 009245
E-Mail: mnelles@bergersingerman.com
Caitlin M. Trowbridge
Florida Bar No. 92113
E-Mail: ctrowbridge@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301
Telephone: (954) 525-9900
Facsimile:  (954) 523-2872

*Counsel for Defendants / Counter-Plaintiffs*
*Thor Industries, Inc. and Thor Tech, Inc.*

*/s/ Robert H. Thornburg*
Robert H. Thornburg, Esq.